UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALI CISSÉ,

                                   Plaintiff,

               v.

ANTHONY J. ANNUCCI, et al.,

                                 Defendants.
_____

Civil Action No.
9:22-CV-0156
(TJM/ATB)

APPEARANCES:                                     OF COUNSEL:

ALI CISSÉ
14-A-2736
Plaintiff, pro se
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

THOMAS J. McAVOY
Senior United States District Judge

**DECISION AND ORDER**

## I.    INTRODUCTION

       Pro se plaintiff Ali Cissé ("plaintiff"), an inmate currently in the custody of the New York

State Department of Corrections and Community Supervision ("DOCCS"), commenced this

action on or about February 17, 2022, with the filing of a complaint.  Dkt. No. 1 ("Compl.").

Plaintiff paid the filing fee.  The Clerk has now forwarded plaintiff's complaint to the Court for

review pursuant to 28 U.S.C. § 1915A.

## II.     DISCUSSION

### A.     Governing Legal Standard

Under 28 U.S.C. § 1915A ("Section 1915A"), a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint. . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding that Section 1915A applies "to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid the filing fee").

In reviewing a pro se litigant's complaint, the court has a duty to liberally construe the pleadings, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is

2

inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id*. (internal quotation marks and alterations omitted).

### B.    Summary of the Complaint

#### 1.  General Overview of the Complaint

Plaintiff's complaint is 37 pages long, names 38 individuals as defendants, is written in narrative form – rather than in enumerated, discrete paragraphs as required by Rule 10(b) of the Federal Rules of Civil Procedure – and by no means can be characterized as a "short and plain statement of the claim[s]" as required by Rule 8 of the Federal Rules of Civil Procedure. *See generally* Compl.  While plaintiff tersely lists the causes of action he purportedly asserts at the outset of his narrative, *see* Compl. at 11, he fails to lucidly connect any of the alleged facts with any of the claims.  In some respects, plaintiff's complaint matches the characteristics of a "shotgun pleading" as described by the Eleventh Circuit Court of Appeals. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (describing two types of "shotgun pleadings" as (1) "being replete with . . . facts not obviously connected to any particular cause of action," and (2) "one that . . . [does] not separat[e] into a different count each cause of action or claim for relief").  Courts in this Circuit and elsewhere

have routinely dismissed shotgun pleadings, even where, as here, the drafter of the pleading is not an attorney and is proceeding in the action pro se.  *See, e.g., Fields v. Conrad*, No. 21-10825, 2022 WL 291359 (11th Cir. Feb. 1, 2022) (affirming the district court's dismissal of a pro se litigant's third amended complaint because it failed to adhere to Rules 8 and 10); *Prezzi v. Schelter*, 469 F.2d 691 (2d Cir. 1972) (affirming the district court's dismissal of the plaintiff's "prolix and for the most part incomprehensible" amended complaint).

Notwithstanding the Court's discretionary authority to dismiss plaintiff's complaint for failing to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure, the Court in this case has nevertheless undertaken an arduous review of the complaint, ever mindful of the Second Circuit's instruction to extend special solicitude to pro se litigants.  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).  Plaintiff is warned, however, his future pleadings must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure, and his failure to comply may result in denial of the relief requested.

### 2.  The Defendants

To set the stage for the analysis of plaintiff's claims that follows in Part II.C of this

Decision and Order, the Court has generated a table listing the 38 defendants and their titles.

| Defendant | Title |
|---|---|
| 1.   Anthony J. Annucci | DOCCS Acting Commissioner |
| 2.   Gregory King | Clinton Correctional Facility Sergeant |
| 3.   Martin Snow | Clinton Correctional Facility Lieutenant |
| 4.   Aron J. Patterson | Clinton Correctional Facility Correctional Officer |
| 5.   Erik C. Mesunas | Clinton Correctional Facility Correctional Officer |
| 6.   Bryan Mason | Clinton Correctional Facility Sergeant |
| 7.   Reginald Bishop | Clinton Correctional Facility Deputy Superintendent for Security |
| 8.   Hilary Deans | Clinton Correctional Facility Inmate Records Coordinator |
| 9.   John Doe #1 | Great Meadow Correctional Facility Sergeant |
| 10. Kevin Santo | Great Meadow Correctional Facility Sergeant |
| 11. Darnell Moore | Great Meadow Correctional Facility Sergeant |
| 12. Christopher Lagree | Great Meadow Correctional Facility Sergeant |
| 13. Colin Frazer | Great Meadow Correctional Facility Captain/Acting Deputy Superintendent of Security |
| 14. Armand Caringi | Great Meadow Correctional Facility Acting Deputy Superintendent of Security |
| 15. Christopher Miller | *unknown* |
| 16. Joseph Corey | Great Meadow Correctional Facility Acting Superintendent |
| 17. Jamie Lovett | Great Meadow Correctional Facility Acting Deputy Superintendent for Programs |
| 18. Randy Gross | Great Meadow Correctional Facility Deputy Superintendent for Administration |
| 19. Robert Besaw | New York State Police Investigator |
| 20. Bryan (last name unknown ("LNU")) | Great Meadow Correctional Facility ORC[1] |
| 21. Keegan Fredricks | Great Meadow Correctional Facility Correctional Officer |
| 22. Erica Rizzo | Great Meadow Correctional Facility Correctional Officer |
| 23. Melissa Collins | Great Meadow Correctional Facility Deputy Superintendent for Mental Health |
| 24. Danielle Dill-Lewis | Great Meadow Correctional Facility Chief of Office of Mental Health |
| 25. Jamie L. Williams | Great Meadow Correctional Facility Notary Public |
| 26. K. Henely | Great Meadow Correctional Facility Commissioner Hearing Officer |
| 27. George Murphy | Great Meadow Correctional Facility Lieutenant |
| 28. Eric Velie | Great Meadow Correctional Facility Sergeant |
| 29. Anthony Villano | Great Meadow Correctional Facility Correctional Officer |
| 30. A. Mead | Great Meadow Correctional Facility Inmate Grievance Resolution Committee Supervisor |
| 31. John Doe #2 | Great Meadow Correctional Facility Inmate Grievance Resolution Committee Sergeant |
| 32. R. Barbosa | Great Meadow Correctional Facility Commissioner Hearing Officer |
| 33. Terilee Stoddard | Great Meadow Correctional Facility ORC |
| 34. Nicholas Tripodi | Great Meadow Correctional Facility ORC |
| 35. Anthony Kubaryk | Great Meadow Correctional Facility Correctional Officer |
| 36. Phillippe Bien-Aime | Great Meadow Correctional Facility Correctional Officer |
| 37. Vivian Joo | Clinton County Assistant District Attorney |
| 38. James O'Gorman | DOCCS Deputy Commissioner |

---

[1]  The complaint does not provide any information regarding what "ORC" stands for.

### 3.  Summary of the Allegations

At all times relevant to the claims in the action, plaintiff was confined either in Clinton Correctional Facility ("Clinton C.F.") or Great Meadow Correctional Facility ("Great Meadow C.F."), prisons operated DOCCS.  What follows below is only a brief summary of the allegations giving rise to plaintiff's claims in this case.  The allegations will be discussed in more detail below in Part II.C of this Decision and Order as they relate to each of the claims.

On April 12, 2021, while plaintiff was waiting in line to use the telephone in Clinton C.F., a commotion sprung up, and plaintiff and other inmates dispersed the area without finding out what had happened.  Compl. at 11.  Plaintiff later learned, however, that the commotion resulted from an inmate assaulting defendant Mesunas.  *Id.* at 12-13.  On April 14, 2021, plaintiff was moved to the Special Housing Unit ("SHU") because he was falsely accused of the assault.  *Id.*  Defendant King issued plaintiff an IMR on April 20, 2021, formally accusing him of assaulting defendant Mesunas.  *Id.* at 15.  Plaintiff remained in the SHU at Clinton C.F. at the direction of defendant Bishop, who ordered security staff to not allow plaintiff out of his cell for any reason.  *Id.* at 12.

On April 16, 2021, plaintiff was transferred to Great Meadow C.F.  Compl. at 14. Although he was initially housed in the SHU, on July 8, 2021, plaintiff was transferred from the SHU to "BHU[,] a unit that is [Office of Mental Health ("OMH")] accommodating due to [plaintiff's] diagnosis of mental health status level 1s."[2]  *Id.* at 19.

While confined in Great Meadow C.F., various defendants issued plaintiff false IMRs, denied him permission to make international phone calls to family abroad, confiscated personal property and legal documents, disclosed some of plaintiff's personal information to

---

[2]  The complaint also provides no explanation for the acronym "BHU" or what it means to have "a mental health status level 1s."

others, failed to process his grievances, and denied him access to a notary public. *See generally* Compl. Plaintiff further alleges that some of the defendants' conduct towards him was motivated by retaliatory animus, based on their belief that plaintiff assaulted defendant Mesunas. *See, e.g., id.* at 18 (alleging that defendants Lovett and Bryan LNU "conspired to deprive [plaintiff] the opportunity to contact [his] family . . . in retaliation of [sic] what [plaintiff] was accused of").

With respect to defendant King's IMR accusing plaintiff of assaulting defendant Mesunas, three disciplinary hearings were conducted at Great Meadow C.F. by three separate defendants (defendants Henley, Murphy, and Barbosa). Compl. at 24-25. At the conclusion of each of the hearings, plaintiff was sanctioned to, inter alia, between 630 and 730 days in SHU[3] and, at least in the first two hearings, the hearing officers recommended a loss of 12 months good-time credits. *Id.* The first two hearing determinations were reversed; the third determination, which was rendered on January 14, 2022, is pending appeal. *Id.* at 25.

The complaint asserts various causes of action against the defendants, most of which arise under the First Amendment, Eighth Amendment, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983"). *See generally* Compl. Plaintiff also asserts a violation of the Health Insurance Portability and Accountability Act ("HIPPA"). *Id.*

For a complete statement of plaintiff's claims, reference is made to the complaint.

---

[3] In the copy of the complaint submitted to the Court, the text on the left-hand side of the pages has been clipped. For that reason, it is not exactly clear how many days of SHU confinement defendant Barbosa sanctioned plaintiff to at the conclusion of the third disciplinary hearing. *See* Compl. at 25. Based on the length of the SHU confinement imposed by defendants Henley and Murphy (a total of 730 days) and the number of days plaintiff alleges defendant Barbosa imposed pre-hearing SHU confinement (273 days) and a loss of packages (357 days), the Court has assumed that defendant Barbosa's SHU sanction ranges from 630 to 730 days.

C.     **Analysis**

    **1.  Claims Asserted Against Defendants in Their Official Capacities**

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp*, 568 F.3d at 365-66.  It is well-settled that Congress did not abrogate states' immunity through Section 1983.  *Quern v. Jordan*, 440 U.S. 332, 343-45 (1979).  Because actions for damages against a state official in his official capacity are essentially actions against the state, *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989), plaintiff's claims seeking damages against the individual defendants in their official capacities are dismissed as barred by the Eleventh Amendment pursuant to Section 1915A(b)(2).[4]

---

[4]  In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a state official in his official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (internal quotation marks omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims cannot be brought directly against the state or a state agency, but only against state officials in their official capacities).  In this case, there are no facts plausibly suggesting that the violations recounted in the complaint are ongoing.

## 2.  First Amendment Retaliation Claims

To state a cognizable First Amendment retaliation claim, a plaintiff's complaint must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks omitted); *accord, Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).  Courts must approach claims of retaliation "'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

Plaintiff alleges that defendants Frazer, Miller, Lovett, Bryan LNU, Stoddard, Tripodi, Fredricks, Rizzo, Kubaryk, and Bien-Aime all retaliated against him by taking various actions because plaintiff was accused of assaulting defendant Mesunas.  *See* Compl. at 15, 17-20, 27-28.  Even assuming the actions taken by those individuals amount to adverse action for purposes of a First Amendment retaliation claim, and that the complaint sufficiently alleges the causation element of the claim, plaintiff's complaint fails to allege that those individuals acted in response to plaintiff exercising a constitutionally protected right.  Assault – the conduct for which plaintiff alleges he was retaliated against – is not constitutionally protected conduct.  *See, e.g., Jackson v. Dzurenda*, No. 11-CV-1668, 2012 WL 5448330, at *2 (D. Conn. Nov. 7, 2012).  Accordingly, the retaliation claims asserted against defendants Frazer, Miller, Lovett, Bryan LNU, Stoddard, Tripodi, Fredricks, Rizzo, Kubaryk, and Bien-Aime are

dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

As for plaintiff's retaliation claim asserted against defendant Collins, the complaint alleges that she revoked her promise to plaintiff to give him "a full time cut" in retaliation for plaintiff declining her request to "sign off" on a grievance that plaintiff had filed.  Compl. at 20. Mindful of the obligation to liberally construe a pro se litigant's pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require defendant Collins to respond to the complaint with respect to this retaliation claim.  In so ruling, the Court expresses no opinion as to whether those claims can withstand a properly filed dispositive motion.

### 3.  First Amendment Communication Claim

Liberally construed, the complaint asserts First Amendment claims against defendants Lovett, Corey, Bryan LNU, Collins, Doe 2, Stoddard, Tripodi, and Mead based on allegations that they either denied plaintiff permission to make international phone calls, restricted his calls to one per month, or ignored plaintiff's complaints that he was being denied permission to call his family overseas.  Compl. at 18, 27.  While prisoners retain a constitutional right to communicate with family, that right is subject to reasonable and legitimate restrictions "serving the . . . needs and exigencies of [an] institutional environment."  *Morgan v. LaValee*, 526 F.2d 221, 225 (2d Cir. 1975).  In addition, prisoners are not constitutionally guaranteed a particular means of communication.  *Ahlers v. Townsend*, No. 12-CV-0575, 2014 WL 4365277, at *5 (N.D.N.Y. Aug. 28, 2014).  Plaintiff's complaint in this case alleges only that he was denied or granted limited access to international phone calls with his family that lives abroad, not that he was denied all means of communicating with his family.  Accordingly,

because plaintiff has failed to plausibly allege that his constitutionally protected right to communication with his family was entirely curtailed by defendants Lovett, Corey, Bryan LNU, Collins, Doe 2, Stoddard, Tripodi, and Mead his First Amendment claim asserted against them is dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).  *See Ahlers*, 2014 WL 4365277, at *5 (dismissing the First Amendment claim based on phone restrictions because the plaintiff failed to "refer in any way to a restriction on access to mail").

### 4. First Amendment Free Exercise Claim

The complaint next asserts a First Amendment free exercise of religion claim against defendant Doe 1 based on the allegation that defendant Doe 1 denied plaintiff, who is Muslim, two consecutive meals on April 16, 2021, and April 17, 2021, during Ramadan. Compl. at 13-14.  The complaint also alleges that defendants Santo, Moore, Lagree, Miller, and Frazer violated plaintiff's free exercise rights by imposing, renewing, or authorizing the imposition of a cell shield order because the shield made it "difficult and uncomfortable to offer acts of worship" in plaintiff's cell.  *Id.* at 15-17.

The First Amendment guarantees the right to free exercise of religion.  *See* U.S. Const. amend I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  This right extends to prisoners, but, like a prisoner's First Amendment right to communication with his family (as discussed above), a prisoner's free exercise rights are subject to restrictions that are "reasonably related to legitimate penological interests."  *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990) (internal quotation marks omitted); *see also Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.").

11

To state a cognizable free exercise claim, an inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006).[5]  In evaluating this factor, a could considers only whether the plaintiff has alleged "that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (internal quotation marks omitted).

The complaint in in this case fails to describe how missing two meals during Ramadan affected any central tenet of plaintiff's religion or that it otherwise substantially burdened his ability to practice his religion or continue fasting during Ramadan.  Similarly, while plaintiff alleges that the cell shield, which was in place for approximately four weeks, made it difficult to "offer acts of worship," plaintiff fails to allege any other facts describing how his religious exercise was impacted.  Compl. at 16.  Without more, the complaint fails to plausibly allege that any of the defendants' conduct substantially burdened plaintiff's religious beliefs.  Accordingly, plaintiff's First Amendment free exercise claims asserted against defendants Doe 1, Santo, Moore, Lagree, Miller, and Frazer are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).  *See, e.g., Sassi v. Dutchess Cnty.*, No. 16-CV-1450, 2017 WL 4773320, at *8 (N.D.N.Y. Oct. 20, 2017) (finding,

---

[5]      The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Brandon v. Kinter*, 938 F.3d 21, 32 n.7 (2d Cir. 2019) ("Our Circuit has not yet decided whether the substantial burden requirement remains good law after [*Emp't Div.*]."); *Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, the Court has applied the substantial-burden test in this matter.

where "[p]laintiff allege[d] that he was prevented from accessing a Bible (either his own or one purchased from the Jail's commissary) for seven days, and denied participation in Bible study classes while incarcerated at the Warren County Jail[,]" that the amended complaint failed to state a free exercise claim because it was "devoid of any allegations that would establish that Plaintiff has a sincerely held religious belief, or that preventing him from accessing a Bible for seven days or attending Bible study classes substantially burdened that belief"); *Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061, 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) ("At the motion to dismiss stage, a complaint must assert sufficient allegations necessary to establish that [the] plaintiff's claim is based upon a sincerely held religious belief.") (alteration and internal quotation marks omitted)); *cf. Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) ("Because [the plaintiff] has neither alleged nor submitted any proof that he sincerely holds to any religious belief that mandates the use of Tarot cards, we conclude that summary judgment was appropriate on the free exercise claim.").

### 5.  First Amendment Access to Courts Claims

Plaintiff's access to courts claims arise from allegations that defendants Villano and Velie disposed of plaintiff's legal papers on August 25, 2021, and that defendant Williams ignored multiple notary requests from plaintiff.  Compl. at 20-21.  Plaintiff also alleges that defendants Mead and Doe 2 denied him access to the courts by not processing some of his grievances.  *Id.* at 21-22.

To state a claim for denial of access to the courts under the First Amendment, plaintiff must allege "(1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim."  *Arar v. Ashcroft*, 585 F.3d 559, 592 (2d Cir. 2009) (quoting *Christopher v. Harbury*,

13

536 U.S. 403, 415 (2002)).  "[T]he right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Harbury*, 536 U.S. at 415; *see also Lewis v. Casey*, 518 U.S. 343, 351-53 (explaining that the "actual injury" requirement means that inmates must "demonstrate that a nonfrivolous legal claim ha[s] been frustrated or was being impeded").  "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Harbury*, 536 U.S. at 415.  Ultimately, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued."  *Id.* at 417.

In this case, while plaintiff alleges that his habeas corpus action pending in the Southern District of New York was "interferred [sic] with" when defendants Villano and Velie confiscated his legal documents on August 25, 2021, a review of the public docket in that action, *Cisse v. James* ("*James*"), No. 20-CV-3869 (S.D.N.Y. filed May 19, 2020), reveals that plaintiff actively communicated with the Court in that action on a routine basis since the issuance of a Report and Recommendation issued on July 2, 2021, which recommended that plaintiff's habeas petition be denied and dismissed.  *James*, No. 20-CV-3869, Dkt. No. 16.  In particular, plaintiff sought, and was granted, four extensions of the deadline to file objections to the Report and Recommendation.  *Id.*, Dkt. Nos. 17-24.  Although one of plaintiff's requests for an extension of the deadline in *James* was based on an allegation that his legal documents related to the action had been confiscated (presumably referring to defendant Villano and Velie's conduct on August 25, 2021), plaintiff's first, third, and fourth requests had nothing to do with access to his legal papers.  *Id.*, Dkt. Nos. 17, 19, 21, 23.  Instead, the first, third, and fourth requests cited plaintiff's isolated confinement and limited access to the law

library as the reasons he was having difficulty complying with the deadline.  *Id.* at 17, 21, 23.

Plaintiff's last deadline to file objections to the Report and Recommendation expired on

March 14, 2022, and the assigned district judge adopted the Report and Recommendation in

an Order dated April 12, 2022.  *Id.*, Dkt. No. 25.  While plaintiff alleges in his complaint (and

in *James*) that the confiscation of his legal papers by defendants Villano and Velie interfered

with his habeas petition, the public record defies any suggestion that defendant Villano's and

Velie's conduct interfered with plaintiffs "*continued* []ability to obtain the relief sought" in the

underlying action.  *Arar*, 585 F.3d at 592 (emphasis added).  Plaintiff was afforded four

extensions of the deadline to file objections, the first of which was granted prior to the

confiscation of his legal papers.  Without more, the Court finds that the complaint in this case

does not plausibly allege that plaintiff's failure to litigate his habeas petition in *James* is

attributable to defendants Villano and Velie.  Accordingly, plaintiff's access to courts claims

asserted against those defendants is dismissed for failure to state a claim upon which relief

may be granted pursuant to Section 1915A(b)(1).

As for plaintiff's claim against defendants Williams, Mead, and Doe 2 arising from

allegations that Williams denied plaintiff's multiple requests for a notary and Mead and Doe 2

interfered with plaintiff's grievances, *see* Compl. at 20-22, even assuming the allegations are

true, they are not sufficient to state a cognizable access to courts claim because the

complaint fails to connect the defendants' conduct to any actual injury or prejudice in

connection with any lawsuit or legal claim.  *See, e.g., Pittman v. Low*, No. 16-CV-1464, 2017

WL 9487179, at *4 (N.D.N.Y. Feb. 8, 2017) (recommending dismissal of the plaintiff's claim,

where the plaintiff had alleged that the superintendent restricted his access to a notary,

because the complaint failed to "allege that the notary restriction impeded [the plaintiff's]

ability to pursue his claims"), *report and recommendation adopted by* 2017 WL 2189576 (N.D.N.Y. May 18, 2017).  Accordingly, plaintiff's access to courts claims asserted against defendants Williams, Mead, and Doe 2 are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

### 6. Eighth Amendment Claims

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (citations omitted)).  While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

### a. Excessive Force

The complaint in this case alleges that, after plaintiff disobeyed defendant Doe 1's direct order to wear someone else's boots, defendant Doe 1 directed other security staff to tighten plaintiff's shackles and waist chain during the transport from Clinton C.F. to Great Meadow C.F. to the point where plaintiff, who has asthma, had difficulty breathing.  Compl. at 13-14.  Plaintiff notified defendant Doe 1 that the waist chain and shackles made the ride in the prison van "unsafe," but defendant Doe 1 ignored him.  *Id.* at 14.  Mindful of the obligation to liberally construe a pro se litigant's pleadings, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court finds that the complaint alleges enough with respect to this excessive force claim asserted against defendant Doe 1 to survive sua sponte review pursuant to Section 1915A.

In so ruling, the Court expresses no opinion as to whether the claim can withstand a properly filed dispositive motion.

Because this claim is asserted against an individual whose name is not known to plaintiff, service of process cannot be effected on him unless and until the individual has been identified by name.  If plaintiff wishes to pursue his claim against defendant Doe 1, he must take reasonable steps to ascertain through discovery the identity of that individual.  Upon learning the name of defendant Doe 1, plaintiff must amend the operative pleading to properly name him as a party.  If plaintiff fails to ascertain the identity of defendant Doe 1 so as to permit timely service of process, the claim asserted against him will be dismissed.[6]

### b.  Conditions of Confinement

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both an objective and a subjective requirement.  *Walker*, 717 F.3d at 125; *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).  To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.'"  *Jolly*, 76 F.3d at 480 (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)); *see also Walker*, 717 F.3d at 125 ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.").  In a prison setting, basic needs include "food, clothing, medical care, and safe and sanitary living conditions."  *Walker*, 717 F.3d at 125.  As to the subjective requirement, "the plaintiff must demonstrate that the defendants

---

[6]  As discussed elsewhere throughout this Decision and Order, some of plaintiff's claims asserted against defendants Collins, Bishop, Frazer, Caringi, Miller, Lovett, Gross, Dill-Lewis, Henley, Murphy, Barbosa, and Deans also survive initial review.  Although those claims are separate and apart from plaintiff's excessive force claim asserted against defendant Doe 1, defendants Collins, Bishop, Frazer, Caringi, Miller, Lovett, Gross, Dill-Lewis, Henley, Murphy, Barbosa, and Deans are respectfully requested to respond to reasonable discovery demands from plaintiff that are aimed at identifying defendant Doe 1.

imposed those conditions with 'deliberate indifference.'"  *Jolly*, 76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Walker*, 717 F.3d at 125; *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998).  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Walker*, 717 F.3d at 125; *Waldo*, 1998 WL 713809, at *2.

Liberally construed, the complaint alleges that defendant Doe 1 denied plaintiff two consecutive meals during Ramadan.  Compl. at 13-14.  With due respect to plaintiff's pro se status, the denial of two meals is not sufficient to state a cognizable Eighth Amendment claim.  *See, e.g., Jean-Laurent v. Los*, No. 12-CV-0132, 2015 WL 1015383, at *9 (W.D.N.Y. Mar. 9, 2015) (dismissing the plaintiff's Eighth Amendment claim based on allegations that he missed the evening Ramadan meal and then again the morning sahor bag for breakfast the next day because, inter alia, "the deprivation of two meals is *de minimis*, and thus, insufficient to establish a substantial deprivation creating a serious danger to an inmate's health"); *Wiggins v. Alameda Cnty. Bd. Of Supervisors*, No. 94-CV-1172, 1994 WL 327180, at *1 (N.D. Cal. June 22, 1994) (dismissing the plaintiff's Eighth Amendment claim based on allegations that Muslim inmates are not provided with two hot meals during Ramadan).  Accordingly, plaintiff's conditions of confinement claim asserted against defendant Doe 1 is dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

The complaint next alleges that defendants Villano and Velie confiscated plaintiff's bed linens on or about August 25, 2021, causing plaintiff to sleep on a bare mattress for

approximately two months,[7] and that defendants Frazer, Caringi, Corey, Lovett, Gross, and Collins took no action upon learning that plaintiff had no bed linens.  Compl. at 21.  With due regard to plaintiff's pro se status, these allegations fail to state a cognizable Eighth Amendment claim.  *See, e.g., Young v. McCain*, 760 F. App'x 251, 257 (5th Cir. 2019) (dismissing the plaintiff's Eighth Amendment claim based on allegations that "he was sentenced to 'strip cell/isolation,' [and] that he was deprived of a mattress, sheets, and blankets for 60 days").  Accordingly, plaintiff's Eighth Amendment claims asserted against defendants Villano and Velie based on allegations that they confiscated his bed sheets for two months are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

### c.  Failure to Protect

The complaint alleges that defendants Annucci and O'Gorman approved plaintiff's transfer back to Great Meadow C.F. knowing that he had been accused of assaulting security staff at the facility in 2017.  Compl. at 22.  Defendants Annucci and O'Gorman knew that "by sending [plaintiff] back to Great Meadow [C.F.] [he] would be at risk and subjected to retaliations."  *Id.*  Plaintiff also alleges that he "wrote letters to [defendants] Annucci and . . . O'Gorman express[ing] concerns about [his] property, [his] rights being violated due to retaliation [at Clinton C.F.] and [he] requested them to appoint investigators . . . but neither responded to [his] letters."  *Id.* at 23.  The Court has liberally construed these allegations to

---

[7]  As noted above in Part II.B.3 of this Decision and Order, the text on the left-hand side of the copy of the complaint submitted to the Court is clipped, and, for that reason, the Court cannot discern precisely how many days plaintiff alleges he was without bed linens.  *See* Compl. at 21.  Nevertheless, plaintiff alleges that he was without them "until [he] was transferred to Marcy Corr. Fac."  *Id.*  Elsewhere in the complaint, plaintiff alleges his "cell property was processed for draft (transfer)" to Marcy Correctional Facility on October 27, 2021.  *Id.* at 28.  Accordingly, the Court assumes that plaintiff was without his bed linens at Great Meadow C.F. for approximately two months.

assert Eighth Amendment failure to protect claims against defendants Annucci and O'Gorman.

"The Eighth Amendment requires prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer*, 511 U.S. at 832); *Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996).  To establish a failure to protect claim, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and that prison officials acted with deliberate indifference to that risk and the inmate's safety.  *Farmer*, 511 U.S. at 836; *accord, Morgan*, 956 F.3d at 89.  With respect to the first prong, "the alleged deprivation must be, in objective terms, sufficiently serious."  *Morgan*, 956 F.3d at 89 (internal quotation marks omitted).  As previously discussed above, deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *accord, Morgan*, 956 F.3d at 89.

With due regard to plaintiff's pro se status, plaintiff's failure to protect claims asserted against defendants Annucci and O'Gorman are subject to dismissal.  The complaint fails to plausibly allege that defendants Annucci and O'Gorman knew of any substantial risk to plaintiff's health or safety and ignored it.  The most serious allegation against those defendants is that they knew plaintiff had been accused of assaulting security staff at Great Meadow C.F. in 2017 and that he faced "retaliation" upon his return to the facility.  Compl. at 22.  This kind of vague threat of potential future harm, however, is not sufficient to plausibly allege a serious risk to plaintiff's health or safety.  *See, e.g., Livingston v. Hoffnagle*, No. 19-

CV-0353, 2019 WL 7500501, at *7 (N.D.N.Y. Nov. 8, 2019) ("Indeed, it is well settled that a defendant's knowledge of a plaintiff's generalized fear of harm is an insufficient basis upon which to establish a failure to protect claim." (citing cases)); *Phelps v. Barrett*, No. 18-CV-2086, 2018 WL 3999692, at *1-2 (C.D. Ill. Aug. 21, 2018) (dismissing the plaintiff's failure to protect claim stemming from allegations that the defendant ignored the plaintiff's wife's phone call "tell[ing the defendant] about bullying and threats" because the report was "too vague to assert that [the d]efendant was aware of a particular threat to [the plaintiff's] safety"); *Beasley v. Stephens*, No. 10-CV-0895, 2011 WL 2670189, at *3 (S.D. Ill. July 7, 2011) ("A vague, general fear of harm that is not based on a specific threat is not enough to state a cause of action for deliberate indifference or failure to protect.").  Accordingly, plaintiff's failure to protect claims asserted against defendants Annucci and O'Gorman are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

### 7. Due Process

The Due Process Clause of the Fourteenth Amendment states that no "State [shall] deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  It contains both a substantive and procedural component.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  *Zinermon*, 494 U.S. at 125 (internal quotation marks omitted).  A procedural due process violation under Section 1983 occurs when the State deprives the plaintiff of "life, liberty, or property . . . *without due process of law*."  *Id.* (emphasis in original).

With respect to procedural due process, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient

process.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d

653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).  It is well

settled that a prisoner that has been lawfully incarcerated retains only "a narrow range of

protected liberty interests."  *Morris v. Dann*, No. 95-CV-0975, 1996 WL 732559, at *3

(N.D.N.Y. Dec. 11, 1996).

Liberally construed, the complaint asserts Fourteenth Amendment due process claims

arising from three categories of conduct.  The Court will discuss each category separately

below.

### a.  SHU/BHU Confinement

First, defendants Bishop, Frazer, Caringi, Miller, Lovett, Gross, Collins, and Dill-Lewis

are alleged to have placed plaintiff in the SHU for 87 days before moving him to the "BHU[,] a

unit that is OMH accommodating due to [plaintiff's] diagnosis of mental health status level

1s."  Compl. at 19.  According to plaintiff, "provisions in the Mental Hygiene Law and SHU

exclusion law" required plaintiff to be confined in the BHU, not the SHU, because of plaintiff's

mental health status, and that defendants Bishop, Frazer, Caringi, Miller, Lovett, Gross,

Collins, Dill-Lewis all knew of plaintiff's status at the time they confined him in the SHU.  *Id.* at

19-20.

While the violation of state law, on its own, does not give rise to a Section 1983 claim,

*see, e.g., Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985), liberally construed, the

complaint here alleges that the violation of state law impacted plaintiff's constitutionally

protected liberty interest in not being confined in SHU.  Mindful of the obligation to liberally

construe a pro se litigant's pleadings, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court

will require defendants Bishop, Frazer, Caringi, Miller, Lovett, Gross, Collins, and Dill-Lewis

to respond to the complaint with respect to the due process claims described above.  In so ruling, the Court expresses no opinion as to whether those claims can withstand a properly filed dispositive motion.

### b.  Cell Shield, Feeding Procedure, Restraint Orders

The second category of conduct giving rise to a due process claim involves the imposition of cell shield, "modified feeding procedure," and restraint orders against plaintiff on or about April 20, 2021.  Compl. at 15.  Defendant Santo is alleged to have made the recommendation for the orders.  *Id.*  The modified feeding procedure order was lifted two weeks later.  *Id.* at 16.  Defendants Moore, Lagree, and Santo renewed the cell shield order at least once until it was lifted four weeks after it was imposed.  *Id.*  The restraint order was in place for three months and it was not reviewed or renewed at any time; according to plaintiff "it was just enforced until it was revoked."  *Id.* at 17.  Defendants Frazer and Miller "signed off on these orders without verifying the authenticity of further investigations[.]"  *Id.*

Courts in this Circuit have routinely concluded that prisoners have no protected constitutional right in confinement in an unshielded cell.  *See, e.g., Telesford v. Annucci*, No. 16-CV-0793, 2017 WL 3600941, at *6 (N.D.N.Y. July 26, 2017) (citing cases), *report and recommendation adopted by* 2017 WL 3588640 (N.D.N.Y. Aug. 18, 2017); *Weathers v. Uhler*, No. 12-CV-0982, 2014 WL 1056947, at *10 (N.D.N.Y. Mar. 18, 2014) (dismissing the plaintiff's due process claim arising from allegations that the defendant "unjustifiably imposed a . . . feed-up hatch without periodic assessment of his good behavior as basis for removing it" because "inmates do not have a constitutionally protected liberty interest in being confined in an unshielded cell").  Inmates also have no constitutionally protected liberty interest in being free from restraints.  *See, e.g., Atkins v. Latanzio*, 915 F. Supp. 668, 373-74 (W.D.N.Y.

1995).  Accordingly, because plaintiff's complaint fails to plausibly allege that he was denied a cognizable liberty interest, his due process claims asserted against defendants Santo, Moore, Lagree, Miller, and Frazer are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

### c.  Disciplinary Hearings

The third category of conduct plaintiff describes as a basis for his due process claims involves the three disciplinary hearings conducted by defendants Henley, Murphy, and Barbosa in connection with the IMR accusing plaintiff of assaulting defendant Mesunas. Compl. at 24-25.  Defendants Henley, Murphy, and Barbosa all allegedly denied plaintiff various procedural protections during the hearings, and each sanctioned plaintiff to, inter alia, anywhere between 630 and 730 days in the SHU.  *Id.*

Mindful of the obligation to liberally construe a pro se litigant's pleadings, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court will require defendants Henley, Murphy, and Barbosa to respond to the complaint with respect to the due process claims described above. In so ruling, the Court expresses no opinion as to whether those claims can withstand a properly filed dispositive motion.

### 8.  False IMRs

To the extent that plaintiff's complaint attempts to assert claims arising from allegations that defendants Patterson, Mason, and Fredericks issued plaintiff false IMRs, those claims are not, on their own, cognizable under Section 1983.  *See, e.g., Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from falsely accused in a misbehavior report.").  While allegations concerning false IMRs are cognizable when there are other allegations triggering a First Amendment retaliation claim (or

Fourteenth Amendment due process claim), *see, e.g., Boddie*, 105 F.3d at 862; *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), the Court has already analyzed plaintiff's First Amendment retaliation claims stemming from the allegations of false IMRs above in Part II.C.2 of this Decision and Order.  Any purported free-standing claims arising from these allegations are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

### 9.  Interference with Grievances

The complaint alleges that defendants Mead and Doe 2 interfered with plaintiff's ability to file grievances at Great Meadow C.F., and that only three of his 12 grievances were processed at the facility.  Compl. at 15, 21-22.  As discussed above in Part II.C.5 of this Decision and Order, prisoners undoubtedly retain a First Amendment right to meaningfully access the courts and petition the government for redress.  *See, e.g., Bounds v. Smith*, 430 U.S. 817, 824 (1977).  The Constitution does not mandate, however, that prisoners be provided access to a grievance procedure during their incarceration.  *See Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (dismissing the amended complaint where the plaintiff alleged that the defendant "failed to process" his grievance because such allegations do not give rise to a constitutional claim); *accord, Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369 (W.D.N.Y. 2005); *see also Justice v. Coughlin,* 941 F. Supp. 1312, 1316 (N.D.N.Y. 1996) ("[M]ere violations of an inmate grievance system do not violate the Constitution.").  Accordingly, plaintiff's claims asserted against defendants Mead and Doe 2 arising from allegations that they failed to process some of plaintiff's grievances are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

### 10. Violation of HIPPA

The complaint alleges that defendant Fredricks violated HIPPA when he obtained confidential medical information about plaintiff in support of an IMR he issued against plaintiff on or about July 5, 2021.  Compl. at 19.  It is well established, however, that there is no private right of action under HIPPA.  *See, e.g., Adams v. Eureka Fire Protection Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009); *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1080 (9th Cir. 2007); *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006).  Accordingly, plaintiff's HIPPA claim is dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

### 11. Malicious Prosecution

Plaintiff asserts claims against defendants Joo, Mason, Besaw, Mesunas, Snow, and Patterson arising from their involvement in initiating criminal prosecution against plaintiff for the alleged assault of defendant Mesunas.  Compl. at 25-27.  Defendants Besaw, Mesunas, Snow, and Patterson all provided false or "subjective" testimony to the grand jury, and defendant Joo, as the prosecutor, knew of the false and/or subjective testimony.  *Id.*  Liberally construed, the complaint asserts malicious prosecution claims against these defendants. *See id.* at 26.

To establish a malicious prosecution claim under Section 1983, a plaintiff must allege that (1) the defendant was acting under color of state law, (2) a violation of the plaintiff's constitutional rights, (3) the defendant initiated or continued a criminal proceeding against him, (4) termination of the criminal proceeding in his favor, and (5) the defendant acted with actual malice.  *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).  With respect to the second element, "it

26

is only the violation of the [Fourth Amendment] that is actionable and compensable under § 1983." *Singer*, 63 F.3d at 116; *see also Coleman v. City of New York*, 688 F. App'x 56, 57 (2d Cir. 2017) ("[A] malicious prosecution claim brought under § 1983 is grounded in the Fourth Amendment.").  "The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty.  A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'"  *Singer*, 63 F.3d at 116.

In this case, even assuming all the allegations in the complaint related to plaintiff's malicious prosecution claims asserted against defendants Joo, Mason, Besaw, Mesunas, Snow, and Patterson are true, by virtue of plaintiff's incarceration status, he cannot satisfy the second element of the claim (as recited above) that requires a deprivation of his Fourth Amendment rights.  "A plaintiff does not have a claim for . . . malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he already is in custody on other charges, because there is no deprivation of liberty interests."  *Doe v. Selsky*, 841 F. Supp. 2d 730, 732 (W.D.N.Y. 2012); *see also Walker v. Sankhi*, 494 F. App'x 140, 142-43 (2d Cir. 2012) ("[Plaintiff's] federal . . . malicious prosecution claims must fail because . . . [plaintiff] could not have suffered a deprivation of liberty as a result of [one] burglary charge because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge, of which he was ultimately convicted.").  Accordingly, plaintiff's malicious prosecution claims asserted against defendants Joo, Mason, Besaw, Mesunas, Snow, and Patterson are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

### 12.  Disclosure of Private Information

The complaint alleges that defendants Deans and Bishop "wrongfully disclosed sensitive information and personnel [sic] records to [defendant] Joo.  In a memorandum dated July 1st-2021, address [sic] to ADA Vivian Joo, [defendant] Bishop and [defendant] Deans disclosed [plaintiff's] OMH level and reversed and expunged determinations."  Compl. at 27.  Liberally construed, these allegations assert a violation of his right to confidentiality and privacy against defendants Bishop and Deans.  At this early juncture, mindful of the obligation to liberally construe a pro se litigant's pleadings, *see Sealed Plaintiff*, 537 F.3d at 191, the Court will require defendants Deans and Bishop to respond to the complaint insofar as it asserts privacy claims arising from the foregoing allegations.  *See Hannicutt v. Armstrong*, 152 F. App'x 35 (2d Cir. 2005).  In so ruling, the Court expresses no opinion as to whether those claims can withstand a properly filed dispositive motion.

### III.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the complaint (Dkt. No. 1) is **ACCEPTED for filing** only to the extent that it asserts the following claims: (1) retaliation against defendant Collins; (2) excessive force against defendant Doe 1; (3) due process against defendants Bishop, Frazer Caringi, Miller, Lovett, Gross, Collins, Dill-Lewis, Henley, Murphy, and Barbosa; and (4) violation of privacy rights against defendants Deans and Bishop; and it is further

**ORDERED** that, except as to the foregoing, the remaining claims, including all claims asserted against the defendants in their official capacities, are **DISMISSED without prejudice**[8] pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

---

[8]  Should plaintiff seek to pursue any of the claims dismissed without prejudice, including any claims asserted against a defendant that has been terminated from the action, he must file an amended complaint.  Any

**ORDERED** that, in order for the United States Marshal Service ("USMS") to effectuate service of process on defendants Collins, Bishop, Frazer, Caringi, Miller, Lovett, Gross, Dill-Lewis, Henley, Murphy, Barbosa, and Deans, plaintiff must submit the following items to the Court within 30 days of the date of this Decision and Order:

(1) 12 complete copies of the complaint (or pay $222.00, which comprises the Court's $0.50/page copying fee of plaintiff's 37-page complaint); and

(2) 12 completed USM-285 forms; and

(3) a certified check or money order, payable to the Clerk of the Northern District of New York, in the amount of $96.00, which constitutes the $8.00/defendant service fee; and it is further

**ORDERED** that, if plaintiff fails to comply with the directive above, the Clerk shall issue summonses for defendants Collins, Bishop, Frazer, Caringi, Miller, Lovett, Gross, Dill-Lewis, Henley, Murphy, Barbosa, and Deans and forward them to plaintiff, who will then be solely responsible for effectuating service of process on those individuals; and it is further

**ORDERED** that, upon receipt of the 12 copies of the complaint (or the copying fee), 12 completed USM-285 forms, and the service fee from plaintiff (as directed above), the Clerk shall issue summonses and forward them, along with copies of the complaint, to the USMS for service of process on defendants Collins, Bishop, Frazer, Caringi, Miller, Lovett, Gross, Dill-Lewis, Henley, Murphy, Barbosa, and Deans.  The Clerk shall forward a courtesy copy of

---

amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant that plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised.  Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.  Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

the summonses and complaint to the Office of the New York State Attorney General; and it is further

      **ORDERED** that upon being served with process in this action, defendants Collins, Bishop, Frazer, Caringi, Miller, Lovett, Gross, Dill-Lewis, Henley, Murphy, Barbosa, and Deans, or their counsel, shall access the exhibits attached to the complaint electronically on the Court's Case Management Electronic Case Files system.  The Clerk is respectfully directed to facilitate the defendants' initial access to the exhibits at no cost; and it is further

      **ORDERED** that a response to plaintiff's complaint shall be filed by defendants Collins, Bishop, Frazer, Caringi, Miller, Lovett, Gross, Dill-Lewis, Henley, Murphy, Barbosa, and Deans, or their counsel, as provide for in the Federal Rules of Civil Procedure after service of process on those individuals; and it is further

      **ORDERED** that plaintiff shall take reasonable steps through discovery to ascertain the identity of defendant Doe 1, against whom plaintiff's excessive force claim arising from the transport from Clinton C.F. to Great Meadow C.F. on April 16, 2021, is asserted.  **Plaintiff's failure to timely serve that defendant will result in dismissal** of the claim asserted against him and termination of the defendant from the action; and it is further

      **ORDERED** that, in light of the foregoing, because there are no pending claims asserted against them, the Clerk is respectfully directed to **TERMINATE** from the docket defendants Annucci, King, Snow, Patterson, Mesunas, Mason, Santo, Moore, Lagree, Corey, Besaw, Bryan LNU, Fredricks, Rizzo, Williams, Velie, Villano, Mead, Doe 2, Stoddard, Tripodi, Kubaryk, Bien-Aime, Joo, and O'Gorman; and it is further

      **ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United

States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Rule 7.1 of the Local Rules of Practice for the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **<u>Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action</u>**; and it is further

ORDERED that the Clerk serve a copy of this Decision and Order and 12 blank USM-285 forms on plaintiff in accordance with the Local Rules of Practice for this Court.

**IT IS SO ORDERED.**


**DATED: April 21, 2022**

Thomas J. McAvoy
Senior, U.S. District Judge